IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICARDO CASTOR, | ) |
| | ) No. 2:24-cv-00823 |
| Plaintiff, | ) |
| | ) |
| vs. | ) Judge Robert J. Colville |
| | ) |
| OFFICER DUSTIN GALICH, OFFICER | ) |
| JARRET KASPRYSZYN, OFFICER | ) |
| JOSHUA STEGENA, OFFICER | ) |
| JONATHAN BRADFORD, OFFICER | ) |
| TRACY SHANNON, OFFICER JARED | ) |
| RUFFING, and OFFICER DAVID ERNST, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss (ECF No. 27) filed by Defendants Jonathan Bradford, Tracy Shannon, and Jared Ruffing, who are police officers with the Allegheny County Police, and the Motion to Dismiss (ECF No. 24) filed by Defendants Dustin Galich, Jarret Kaspryszyn, Joshua Stegena, and David Ernst, who are police officers with the Munhall Police Department. Defendants seek dismissal with prejudice of all claims set forth in Plaintiff's Complaint. (ECF No. 1). Plaintiff has not filed a Brief in Response. Nevertheless, Defendants' Motions to Dismiss have been fully briefed for six months and are now ripe for disposition, and the Court rules on the Motions here.

I.     Factual Background & Procedural History

In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

1

On June 6, 2024, Plaintiff, Ricardo Castor, was riding in the passenger seat of a car driven by his girlfriend, Cassandra Laughlin. *Id*. ¶ 10. At approximately 3:30 PM, another driver on the road, Robert Bacon, while stopped at a red traffic light, threw an unspecified number of ketchup packets through Laughlin's window, hitting her head. *Id*. ¶ 11. Plaintiff exited the vehicle to confront Bacon, who threatened Plaintiff with a baseball bat. *Id*. ¶ 12–13. Plaintiff "responded emotionally" to this altercation. *Id*. ¶ 14.

Defendant police officers arrived at the scene, approached Plaintiff from behind, and at least one of them began shouting at him. *Id*. ¶ 15–16. Plaintiff turned toward Defendants, in order to, in his own words, return to his car. *Id*. ¶ 17. At least one of Defendants proceeded to attack Plaintiff in an unspecified manner. *Id*. ¶ 18. While Plaintiff tried to explain himself, at least one of Defendants continued attacking Plaintiff in an unspecified manner, and at least one of Defendants tased him, causing him to fall to the ground. *Id*. ¶ 19–21. At least one Defendant then repeatedly struck Plaintiff while he was on the ground. *Id*. ¶ 22.

Plaintiff was then arrested, and while he was in the patrol car, Defendants colluded to blame him for escalating the encounter. *Id*. ¶ 24–25. Plaintiff was charged with Felony Aggravated Assault, Terroristic Threats, Simple Assault, Resisting Arrest, Harassment, Disorderly Conduct, and Obstruction of Highways or other Public Passages. *Id*. ¶ 30. The charge for Felony Aggravated Assault was dropped. *Id*. ¶ 31. Although Defendants misrepresented the facts and lacked probable cause to sustain the charges, Plaintiff pled guilty to Obstruction of Highways and a Summary Offense of Harassment. *Id*. ¶ 29–32. As a result of the above events, Plaintiff "lost his job, was dismissed from Chatham University, and endured pain, suffering, and humiliation, including severe emotional harm." *Id*. ¶ 33. Highlighted in the Complaint is the fact that Plaintiff is African American, while all Defendants are white. *Id*. ¶ 4–11.

On June 6, 2024, Plaintiff filed a Complaint with § 1983 claims for Excessive Force under the Fourth Amendment to the U.S. Constitution, Malicious Prosecution under the Fourth and Fourteenth Amendment to the U.S. Constitution, and Equal Protection under the Fourteenth Amendment to the U.S. Constitution, and common law claims for Intentional Infliction of Emotional Distress, Assault, and Battery. *Id.* ¶ 34–132. On August 29 and 30, 2024, Defendants filed Motions to Dismiss, along with Briefs in Support (ECF Nos. 25 & 27).

II.     **Legal Standard**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the

4

complaint would be inequitable or futile. *See, e.g.*, *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

### III.    Discussion

#### A. Excessive Force

Plaintiff brings a § 1983 claim for Excessive Force under the Fourth Amendment to the United States Constitution. Defendants argue that this claim should be dismissed because Plaintiff fails to plead sufficient facts to establish individual liability for any single Defendant. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Therefore, "[t]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). "The inquiry turns on objective reasonableness, meaning that the standard is whether the police officer's actions [were] objectively reasonable in light of the facts and circumstances facing the officer, regardless of the officer's intent or motivation." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).

"[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968). The "seizure" of a person by law enforcement occurs when "in view

of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 545 (1980). In *Mendenhall*, Justice Stewart specifically points to officers touching a citizen and displaying a weapon as examples of seizures. *Id*. at 554. In the instant case, the Complaint alleges that Plaintiff was tased and struck by an unspecified number of officers. ECF No. 1 ¶ 16–23. This is plainly a seizure.

To determine whether the seizure was "unreasonable," a court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). A court's consideration is fact-specific, and requires an analysis of "the severity of the underlying offense, the threat to the safety of the officers or others posed by the suspect in question, and whether that suspect is actively resisting arrest." *Wargo v. Mun. of Monroeville, PA*, 646 F. Supp. 2d 777, 783–784 (W.D. Pa. 2009) (citing *Graham*, 490 U.S. at 396). Such a determination must be conducted from the perspective of a reasonable officer at the scene, including such split-second decisions that might be made as a police encounter escalates or evolves. *Graham*, 490 U.S. at 397.

In order to establish excessive force, a plaintiff must allege conduct so egregious that it "shocks the conscience" because it is "brutal, demeaning, harmful, and unjustifiable by any government interest." *Smith v. Department of Gen. Services of Pennsylvania*, 2006 WL 1626579, at *2–3 (3d Cir. Jun.12, 2006) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)).

Based on the facts alleged in the Complaint, it is difficult for the Court to understand precisely what is alleged to have happened during the incident in question, and in particular, which of the Defendants did what to Plaintiff, and how the facts connect to each cause of action. The lack of any clarifying briefing has not helped with this confusion. That said, the Court interprets

Plaintiff's Complaint as an attempt to assert that when non-specific Defendant or Defendants "began to shout" at Plaintiff, when non-specific Defendant or Defendants "proceeded to attack" and "continued to attack" Plaintiff in an unspecified manner, when non-specific Defendant or Defendants "tased" Plaintiff, and when non-specific Defendant or Defendants "repeatedly struck [Plaintiff] while he was on the ground," all while Plaintiff was attempting to explain the nature of the altercation between Plaintiff and Mr. Bacon and ask what he had done wrong, these acts combined to create an unreasonable seizure. ECF No. 1 ¶ 16–23.

The Court agrees as to the presumed intended substantive allegations. Plaintiff asserts that Defendants approached him from behind while he was facing Mr. Bacon's van. *Id*. ¶ 15–17. Plaintiff then turned and faced Defendants, at which point, an unspecified Defendant or Defendants attacked Plaintiff in an unspecified manner and tased him. *Id*. ¶ 18–21. Given the facts as presented, even a person who exits his car at a stoplight, engages in an admittedly emotional altercation with another motorist, and then merely turns toward police, cannot, without more, be reasonably viewed as such a threat—to the police, to the other motorist, and to bystanders—so as to warrant physical assault and tasing. The allegations, if proven, do shock this Court's conscience, and analyzed from the objective standard of a reasonable officer at the scene, are simply not justified.

However, "[a]n allegation that unspecified individuals beat and tased [the plaintiff] is insufficient to infer that the force exerted was unreasonable under the totality of the circumstances." *Luna v. Allison*, 2019 WL 3997895 (W.D. Pa. July 26, 2019), *report and recommendation adopted*, 2019 WL 3997247 (W.D. Pa. Aug. 23, 2019) (citing *Velius v. Twp. of Hamilton*, 754 F. Supp. 2d 689, 694 (D.N.J. 2016)). This raises issues for Plaintiff's excessive force claim. A plain and commonsense reading of the Complaint implies that no single action of

7

alleged excess was taken by each and every Defendant.  In fact, it may well be that some or most of Defendants did none of the actions alleged, and were, in those specific regards, mere bystanders.  Allowing Plaintiff to survive a motion to dismiss on a claim of excessive force with the facts on record would be ascribing vicarious liability, which is not appropriate in § 1983 cases. *Iqbal*, 556 U.S. 662, 676.  "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. at 677.  The Court can imagine a circumstance where police officers coordinate to intentionally conceal their identities from a seized citizen to avoid liability, but Plaintiff does not provide evidence of, or even allege, such a conspiracy.

Plaintiff has substantively stated a claim of Excessive Force generally against the Defendants collectively but fails to adequately identify the specific actors who used excessive force and in what specific respects.  Accordingly, as to the Excessive Force claim, Defendants' Motions to Dismiss are granted.  However, Plaintiff will be granted leave to amend.

### B.  Malicious Prosecution

Plaintiff also brings a claim under § 1983 for Malicious Prosecution pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.  Defendants argue that this claim should be dismissed because Plaintiff fails to establish that Defendants lacked probable cause and because all but one Defendant, Officer Galich, were not involved in Plaintiff's arrest.  When "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  "[I]t is the Fourth Amendment, and not [the Fourteenth Amendment], under which [a malicious prosecution] claim must be judged." *Black v. Montgomery County*, 835 F.3d

358, 365 (3d Cir. 2016) (citing *Albright*, 510 U.S. at 271). As such, the Court will analyze this claim under the Fourth Amendment standard.

Because a § 1983 Malicious Prosecution claim implicates a plaintiff's Fourth Amendment rights, a plaintiff must allege facts showing that the prosecution resulted in a seizure. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005); *see also Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) ("To succeed on [a malicious prosecution] claim, a plaintiff must show that a government official charged him without probable cause, *leading to an unreasonable seizure of his person*." (emphasis added) (citation omitted)). If a seizure has resulted from the prosecution, a plaintiff must then establish the common law elements of Malicious Prosecution. *Merkle v. Upper Dublin Sch. District*, 211 F.3d 782, 792 (3d Cir. 2000). Under Pennsylvania law, the elements of Malicious Prosecution are "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Id*. at 791.

The Complaint outlines the criminal charges brought against Plaintiff based on the alleged collusion by Defendants. ECF No. 1 ¶ 30. The count for Obstruction of Highways and Summary Offense of Harassment, to which Plaintiff pled guilty, did not end in Plaintiff's favor, and as such, these charges cannot be used as a foundation for a Malicious Prosecution claim. Arguably, the Felony Aggravated Assault count, which was dropped, did end in Plaintiff's favor. *Id*. ¶ 29–23.

Plaintiff has not alleged facts showing that there was any particular seizure as a result of the charge that ended in his favor. In fact, the most reasonable inference from the record is that any seizure of Plaintiff's person would have occurred with or without that particular charge, because there were charges that did not end in Plaintiff's favor, which also laid the foundation for

his seizure. As such, the claim for Malicious Prosecution cannot proceed as it fails to implicate the Fourth Amendment. *See, e.g.*, *Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005) ("To prevail on this claim, [the plaintiff] must show that the officers lacked . . . probable cause for [the plaintiff]'s arrest and prosecution for [one of the charges] . . . [because there was probable cause for one of the charges, this] disposes of [the plaintiff's] malicious prosecution claims with respect to all of the charges brought against her, including the [one that ended in the plaintiff's favor].")

Accordingly, Plaintiff has failed to state a claim of Malicious Prosecution, and so, as to the Malicious Prosecution claim, Defendants' Motions to Dismiss are granted.

### C. Equal Protection

Plaintiff also brings a § 1983 claim for Equal Protection under the Fourteenth Amendment to the United States Constitution. Defendants argue that this claim should be dismissed because Plaintiff has failed to allege facts to support a claim of selective enforcement. The Equal Protection Clause of the Fourteenth Amendment prohibits a State from denying "any person within its jurisdiction the equal protection of the laws." U.S. CONST., AMEND. XIV, § 1. "States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The purpose of the Fourteenth Amendment is primarily to prevent racism and other forms of discrimination, either by statute or by state enforcement thereof. *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352–53 (1918)). To establish a Fourteenth Amendment Equal Protection claim, a plaintiff must show that he was "treated differently from other similarly situated individuals . . . based on an unjustifiable standard." *Dique v. New Jersey State Police*, 603 F.3d 181, 184, n.5 (3d Cir. 2010) (internal quotation marks omitted). "Unjustifiable" means the treatment was not for a

legitimate state interest, but rather to prevent the plaintiff from exercising a fundamental right. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

In the instant case, Plaintiff appears to proceed on a theory that treatment is inherently "different," for Equal Protection purposes, when the plaintiff is a protected minority. No other facts suggest even slightly that Defendants' alleged treatment of Plaintiff was because he is African American, and that non-African American citizens receive different treatment. In fact, there were two other parties present during the events in question, Cassandra Laughlin and Robert Bacon, who, at least on the basis of the Complaint, were not subject to the same treatment, but Plaintiff fails to make a distinction as to their race. It is not a remote inference to draw that the difference in treatment was due to Plaintiff's distinct behavior, (specifically leaving his vehicle at a redlight while upon a roadway, and confronting another motorist,) not due to his race. A claim respecting the race of the parties and the treatment they receive cannot alone create an inference of racism. As Chief Justice Taft put it in *Sioux City Bridge*, "[T]here must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity." *Sioux City Bridge*, 260 U.S. 447. The logic of Equal Protection inherently requires a finding that outside of the treatment toward Plaintiff, another standard exists.

As to justifiability, again, Plaintiff provides facts that imply that an altercation was escalating, and that Defendants' actions were specifically about public interest rather than merely preventing Plaintiff from exercising his rights. Plaintiff turned toward Defendants after they observed him exiting his car at a stoplight, approaching another driver, and acting emotionally. These alleged facts fail to adequately assert that Defendants' actions were in any manner influenced by Plaintiff's race. Plaintiff's assertion that they were is entirely conclusory.

The Court sees no facts to support a finding that Defendants' alleged actions were different or unreasonable. As such, Plaintiff has failed to state a claim of Equal Protection, and so, as to the Equal Protection claim, Defendants' Motions to Dismiss are granted.

### D. Shotgun Pleading

The Court intends to allow Plaintiff to amend his Complaint. Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The Third Circuit Court has sought "to eliminate the all too common shotgun pleading approach to . . . equal protection claims." *Hynson By & Through Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031, n.13 (3d Cir. 1988). "[T]his disfavored approach follows one of four different tacts [sic]: (1) 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts'; (2) a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; (3) a complaint that does 'not separat[e] into a different count each cause of action or claim for relief'; and (4) a complaint that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Doe v. Quinones*, 2018 WL 1955133 (W.D. Pa. Apr. 5, 2018), report and recommendation adopted, 2018 WL 1951094 (W.D. Pa. Apr. 25, 2018) (quoting *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. May 3, 2017)).

The Complaint in the instant case violates elements 2 and 4 of the Shotgun Pleading Doctrine, with numerous conclusory statements and facts poorly linked to the individual Defendants and the causes of action. These pleading errors have left Defendants and the Court to guess at who is being accused of which alleged violation and how the facts speak to said violations.

It is well within the Court's right to summarily dismiss the Complaint as improperly pled. However, the Complaint, while poorly pled, does not at this juncture strike the Court as categorically meritless. While the Court hesitates to provide legal advice, an amended complaint will have to include explanatory details to ensure that the Court can identify which facts create the basis for a particular cause of action and which Defendant or Defendants is responsible for which actions or omissions.

### E. Remaining Tort Counts

"Federal courts are courts of limited jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). A district court may, however, decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3). In deciding whether to decline to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Because the constitutional claims were the sole jurisdictional basis that brought this action to this District, the Court finds it premature to make any findings related to the remaining state claims for Intentional Infliction of Emotional Distress, Assault, and Battery without the presence of a federal question before the Court. The factors of judicial economy, convenience, fairness, and comity all weigh in favor of this Court declining to exercise supplemental jurisdiction without

conviction that there is a claim respecting federal law to which the remaining state claims are ancillary. Accordingly, if an amended complaint does not present a credible federal question, the Court will be inclined to dismiss the remaining state law claims to allow Plaintiff to pursue the same in state court. Pending any such amendment, the court declines to exercise supplemental jurisdiction over the state claims at this time.

**Conclusion**

For the reasons discussed above, as to Counts I, II, and III, the Court will grant Defendants' Motions to Dismiss. The Court will decline to exercise supplemental jurisdiction over the Excessive Force, Malicious Prosecution, and Equal Protection claims until a viable federal question is pled. All claims will be dismissed without prejudice, and the Court will grant Plaintiff leave to amend his complaint within 21 days of the date of this memorandum. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 31, 2025

cc: All counsel of record